Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5526 | **DATE** | 1/18/2002 |
| **CASE TITLE** | Tricontinental, et al. Vs. Anixter, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting Pricewaterhousecoopers' motion to dismiss (26-1) and also the individual defendants' motion to dismiss claims under Section 11 and 15 of the 1933 Act. Defendant, Pricewaterhousecoopers is, therefore, dismissed from the complaint. The court also dismisses counts III and IV of the complaint against the individual defendants.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 22 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 1/18/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRICONTINENTAL INDUSTRIES LTD.  )
and **TRICONTINENTAL DISTRIBUTION** )
**LIMITED**, formerly known as )
**TEXCAN CABLES LIMITED**, )
)
Plaintiffs, )
)
v. )
) No. 01 C 5526
ALAN B. ANIXTER, SCOTT C. ANIXTER, )
CARL E. PUTNAM, DONALD WELCHKO, )
WILIAM R. ANIXTER, PETER HUIZENGA, )
IRA J. KAUFMAN, THOMAS J. REIMAN, )
MICHEAL SEGAL, LEE B. STERN, )
COOPERS & LYBRAND, L.L.P. and )
PRICEWATERHOUSECOOPERS, LLP, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

On September 21, 1998, Tricontinental Industries Ltd. and Tricontinental Distribution Limited, formerly known as Texcan Cables, Limited ("Tricontinental"), sold assets to Anicom, Inc., in exchange for Anicom stock. Tricontinental sues individual officers and directors of Anicom as well as PricewaterhouseCoopers, LLP ("PwC"), an accounting firm that provided auditing and consulting services to Anicom in the time surrounding the transaction, for violations of the Securities Acts of 1933 and 1934, and for violations of several Illinois laws. PwC moves to dismiss the claims against it, which arise under 15 U.S.C. § 10(b) and SEC Rule 10b-5 as well as Illinois law. Several of the individual defendants (Alan Anixter, Scott Anixter, Carl Putnam and Donald Welchko) move

to dismiss the claims under §§ 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o. I grant the motions.

I.

Tricontinental alleges that, for the purposes of the September 21, 1998 transaction, it relied on Anicom's year-end 1997 10-K report, which had been audited by PwC, as well as two 10-Q quarterly reports, not audited by PwC, but allegedly containing false statements about earnings. PwC audited those reports as part of its annual year-end audit, but not until after the transaction was complete. Tricontinental alleges that PwC was aware that the 10-Q reports contained false statements, and that they were obligated to reveal this fact because of their close participation in the transaction. PwC moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim and under Rule 9(b) for failure to plead fraud with particularity.

On a motion to dismiss, I take all well pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *Szumny v. American Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). I will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Id.*

A.

In a Rule 10b-5 case, "a plaintiff must establish that (1) the

2

defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement or omission proximately caused the plaintiff's damages." *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 851 (7th Cir. 1998). "[P]leading fraud with specificity is both an element of the SEC Rule 10b-5 cause of action and a pleading requirement of the Federal Rules." *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 280-81 (7th Cir. 1996); Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The complaint does not allege that PwC made any actionable false statement or omission. Here, the only alleged affirmative representations by PwC relate to its audit certification for 1997, which was issued on March 30, 1998, and included in Anicom's 1997 year-end 10-K filing, Compl. ¶ 35, as well as the August 18, 1998, registration statement for the transaction, *id.* ¶ 38. The statements in the 1997 audit are not alleged to be fraudulent. *Id.* ¶ 24. The only other affirmative statements alleged are PwC's year-end audits for 1998 and 1999, completed *after* the transaction, ¶ 38-39, so they cannot form the basis of a Rule 10b-5 claim here because Tricontinental could not have relied on them. *Latigo*

3

*Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1325 (7th Cir. 1989). Thus the gravamen of Tricontinental's complaint is an omission: PwC's failure to disclose the "irregularities," *id.* ¶ 41, in the two unaudited 10-Q reports[1] from the first and second quarters of 1998. The language of Rule 10b-5 forecloses this theory. Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact *or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.*" (emphasis added). The rule makes no reference to the statements of others, and the highlighted portion demonstrates that a defendant is liable only for those omissions that make his *own* statements misleading. Nevertheless, Tricontinental offers several arguments why PwC should be liable under the Rule 10b-5.

An omission of a material fact is only actionable under Rule 10b-5 if the defendant has a duty to disclose that fact. *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995). A duty to disclose arises where the failure to speak "would render the defendant's *own* prior speech misleading or deceptive," or where "the law imposes special obligations, as for accountants, brokers, or other experts, depending on the circumstances of the case." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1206 (11th Cir. 2001)

---

[1] The complaint alleges that PwC did not audit the first and second quarter 10-Q reports until its year-end audit for 1998, *id.* ¶ 38, so as of the sale, PwC had not audited the quarterly reports.

4

(emphasis in original). State law, not federal securities law, is the source of any duty that may exist here. *DiLeo*, 901 F.2d at 628.

In Illinois, an accountant has no duty to "blow the whistle on improper behavior by [its] clients." *Id.* at 629; *Latigo Ventures*, 876 F.2d at 1326-27. The Illinois Public Accounting Act, 225 ILCS 450/0.01 *et seq.* ("IPAA"), does not create such a duty. The IPAA insulates an accountant from liability to parties with whom it is not in privity, except for fraud claims, § 30.1(1), and "other acts, omissions, decisions or conduct, if [the accountants are] aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action," § 30.1(2). But the act speaks only of liability for the accountant's acts, not for the client's acts, and it says nothing about a duty to speak. § 30.1. The only case cited by Tricontinental construing the IPAA does not support the existence of an accountant's duty to reveal its *client's* misleading statements. *See Chestnut Corp. v. Pestine, Brinati, Gamer, Ltd.*, 667 N.E.2d 543 (Ill. App. Ct. 1996). In *Chestnut Corp.*, the accountant had made affirmative representations about an audit that were misleading. *Id.* at 545. Here, in contrast, PwC is alleged to have made no affirmative statements about the two allegedly fraudulent quarterly reports. The Act does not create a duty of an accountant to reveal its client's improprieties.

5

Tricontinental argues that PwC surely knew about the fraud prior to the September 1998 closing because, pursuant to § 711.10 of the American Association of Certified Public Accountants Professional Standards, PwC was required, before signing the consent letters that permitted its 1997 audit to be included in Anicom's April and August 1998 registration statements, see PwC Ex. C, to update that audit. But even if this is so (and the duty in § 711.10 generally does not extend beyond inquiry of officers and executives as to whether any material change has occurred), this does not create a duty to Tricontinental, who was not a purchaser of the stock that was the subject of either of those registration statements.

In addition, even if PwC knew or recklessly disregarded the fact that the quarterly statements contained fraudulent sales statements, that runs only to whether PwC acted with scienter, see DiLeo, 901 F.2d at 629, and scienter is irrelevant if there was no actionable misrepresentation or omission. Allowing a plaintiff to bootstrap the existence of a fraudulent omission onto an accountant's knowledge of impropriety would eliminate the requirement of a misrepresentation. See Latigo Ventures, 876 F.2d at 1326 (disapproving "a claim that accountants who participate in or even are merely aware of a fraud by a client have a duty under Rule 10b-5 and the common law of Illinois to broadcast that fraud to anyone who might buy the client's stock. This theory of

6

whistleblower liability or financial good Samaritanism severs accountants' liability from the making of representations.").

B.

Tricontinental argues that PwC acted as more than a mere auditor because PwC was "actively involved" in the transaction, Compl. ¶ 40, and that its involvement gave rise to a duty to reveal Anicom's alleged financial shenanigans. However, the law that it cites does not support this proposition. In *SEC v. Seaboard Corp.*, 677 F.2d 1289 (9th Cir. 1982), the defendant attorney's liability stemmed from his own misrepresentation in an opinion letter, and not from his silence in the face of his client's fraud. *Id.* at 1293, 195-96. *See also Ackerman v. Schwartz*, 947 F.2d 841, 848 (7th Cir. 1991) (Attorney could not escape liability for statements in opinion letter when he authorized client to release the letter to prospective buyers.).

Moreover, even if "active participation" in the transaction (as opposed to in the fraud) were enough to establish liability against PwC, the allegations in the complaint about PwC's role are conclusory and vague. The complaint says only that PwC "participated directly in the negotiations with Plaintiffs," "represented Anicom in discussions with Plaintiffs about financial and operational details" of the transaction, ¶ 40, and "dealt directly with Plaintiffs," ¶ 41. This falls short of the particularity--the where, when and what required by Rule 9(b)--

7

about what PwC did or said, and those are the only acts for which it can be liable. If PwC's alleged omissions did not render its *own* statements misleading, Tricontinental's theory of recovery depends on "aider and abettor" liability, which the Supreme Court expressly rejected in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).

Because the complaint fails to allege any misleading act or omission, Tricontinental's state law claims fail as well. *See Board of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989) (holding that both fraud and negligent misrepresentation require a misrepresentation). PwC's motion to dismiss is granted.

II.

The individual defendants move to dismiss counts III and IV of the complaint, which seek relief under sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o, on the basis of a registration statement filed pursuant to the agreement between Texcan, now Transcontinental, and Anicom. The motion is granted. The purpose of the registration statement was to enable Transcontinental to sell the Anicom stock that Transcontinental received as part of its sale of Texcan. That sale closed in September, 1998. The agreement for the sale required that Anicom register the stock within 60 days after the closing. Section 11 is simply inapplicable to Transcontinental's purchase in September of

stock of Anicom. *See, e.g., Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995). The securities were not issued pursuant to the later filed registration statement.

                                III.

PwC's motion to dismiss is GRANTED. The individual defendants' motion to dismiss the claims under §§ 11 and 15 of the 1933 Act is GRANTED.

                    ENTER ORDER:

                    *[signature]*
                    **Elaine E. Bucklo**
                    United States District Judge

Dated:    January 18, 2002