Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5526 | **DATE** | 7/18/2002 |
| **CASE TITLE** | Tricontinental Industries, et al. vs. Anixter, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The defendants' motion to dismiss (33-1) is granted in part as to certain oral statements and press releases, but denied otherwise. Enter Memorandum Opinion and Order.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 19 2002 | 67 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MPJ | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRICONTINENTAL INDUSTRIES LTD. and )
TRICONTINENTAL DISTRIBUTION )
LIMITED, formerly known as **TEXCAN** )
**CABLES LIMITED**, )
)
Plaintiffs, )
)
v. )
) No. 01 C 5526
ALAN B. ANIXTER, SCOTT C. ANIXTER, )
CARL E. PUTNAM, DONALD WELCHKO, )
WILLIAM R. ANIXTER, PETER HUIZENGA, )
IRA J. KAUFMAN, THOMAS J. REIMAN, )
MICHAEL SEGAL, LEE B. STERN, )
COOPERS & LYBRAND, L.L.P. and )
PRICEWATERHOUSECOOPERS, LLP, ) **DOCKETED**
)
Defendants. ) JUL 1 9 2002

## MEMORANDUM OPINION AND ORDER

Tricontinental Industries Ltd. and Tricontinental Distribution Ltd., formerly known as Texcan Cables, Ltd. (collectively, "Tricontinental"), sold assets to Anicom, Inc., in exchange for Anicom stock. Tricontinental sues individual officers and directors of Anicom for violations of the Securities Acts of 1933 and 1934, and for violations of several Illinois laws. I have already dismissed the claims arising under the 1933 Act. *See Tricontinental Indus., Ltd. v. Anixter*, 184 F. Supp. 2d 786 (N.D. Ill. 2002).[1] Alan Anixter, Scott Anixter, Carl Putnam and Donald Welchko (the

---

[1] That opinion also dismissed the claims against Anicom's auditor, PricewaterhouseCoopers, LLP.

"individual defendants") move to dismiss the remaining claims against them, which arise under 15 U.S.C. §§ 10(b) and 20(a), SEC Rule 10b-5, and Illinois law. I grant the motion in part and deny it in part.

I.

On September 21, 1998, Anicom purchased assets from Tricontinental for cash and approximately $33.5 million worth of Anicom stock. Anicom distributed telecommunications network products. It went public in 1995, and, according to the complaint, it quickly expanded its market share through an aggressive acquisition strategy--between 1995 and 1997, Anicom acquired twelve other cable distribution companies. Because Anicom used its own stock to make these purchases, Tricontinental alleges that it was critical to the acquisition strategy that the value of the stock be maintained at the highest possible level.

Scott Anixter contacted Tricontinental in 1996 and 1997 to inquire after a purchase of its assets, but Tricontinental was not interested at the time. Anicom reported record year-end sales and income in 1997 (its net sales were $243.6 million, nearly double what they had been in 1996). Tricontinental does not allege that the 1997 reported revenues and earnings were inflated by fraud. However, in the first quarter of 1998, Tricontinental alleges that Anicom was facing serious financial difficulties and that the individual defendants knew this and decided deliberately to conceal

2

these difficulties by overstating revenues and earnings for the first and second quarters of 1998. Anicom reported these allegedly false revenues and earnings in its Form 10-Q Quarterly Reports filed with the SEC in May and August of 1998. Scott Anixter made several public statements about Anicom's "financial strength."

Tricontinental alleges that Anicom overstated its revenues and earnings by creating fictitious sales orders and submitting "pre-billing" invoices for goods and services that it never intended to deliver or perform. The individual defendants allegedly directed employees to "pre-bill" customers for products that had not been ordered, and ordered them to create "dummy" purchase orders. Tricontinental provides only one concrete example of these accounting irregularities: a pre-billing invoice for J.W. Few, dated March 31, 1998, for cable wire worth $2.1 million. Tricontinental alleges that the individual defendants made little effort to conceal this fraudulent scheme from other Anicom employees and officers, and that the fictitious accounting entries were made at or just before the end of the quarter.

It was in the midst of this alleged fraudulent scheme that Alan and Scott Anixter met with Tricontinental to negotiate the September 1998 asset purchase. Tricontinental says that the Anixters represented that Anicom "had a great future and that the upward earnings trend in Anicom's reported earnings would continue," and that the stock involved in the transaction was worth

$40 million. In reliance on these oral representations and the representations in the earnings reports, Tricontinental entered into the Asset Purchase Agreement ("the Agreement").

The Agreement represented that Anicom had filed all of the required SEC forms and reports, and that the reports did not, at the time they were filed, "contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading." It also represented that Anicom's audited year-end 1997 10-K form was accurate and complete. Tricontinental does not challenge the accuracy of the 1997 10-K. Anicom provided the audited 1997 10-K and the unaudited 10-Qs for the first two quarters of 1998. The sale closed on September 21, 1998.

On July 18, 2000, Anicom announced that it was investigating possible "accounting irregularities" that could result in revisions of up to $35 million to previous financial statements. It stated that its 1998 and 1999 financial statements should not be relied on pending the investigation, and that Putnam and Welchko had taken administrative leave pending the completion of the investigation. NASDAQ suspended trading of Anicom's stock in response to this announcement.

On November 13, 2000, Anicom announced the results of the investigation, and said that it had overstated revenues and income

4

by nearly $40 million and $35 million, respectively. For 1998, Anicom overstated its revenues by $13.6 million and its earnings by $16 million. Rather than income of more than $13 million in 1998, Anicom should have reported a loss of $2.8 million. Anicom promised to revise its financial statements for 1998, 1999, and the first quarter of 2000. Scott and Alan Anixter resigned on the day of the announcement, and NASDAQ delisted Anicom's stock three days later. Anicom never restated its financial statements; instead it filed bankruptcy on January 5, 2001.[2]

Tricontinental sues the individual defendants for securities fraud under §§ 10(b) and 20(a) of the 1934 Securities Act, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5, and for common law fraud under Illinois law. The individual defendants move to dismiss. On a motion to dismiss, I take all well pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). I will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Id.*

---

[2] A class action against Anicom, Putnam, Welchko and Scott and Alan Anixter is currently pending in this district before Judge Darrah. The class includes buyers of Anicom's stock from February 17, 1999 to July 18, 2000. Judge Darrah denied the individual defendants' motion to dismiss. *See In re Anicom Inc. Secs. Litig.*, No. 00 C 4391, 2001 WL 536066 (N.D. Ill. May 18, 2001).

II.

To state a claim for a violation of Rule 10b-5, "a plaintiff must establish that (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement or omission proximately caused the plaintiff's damages." *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 851 (7th Cir. 1998). "[P]leading fraud with specificity is both an element of the SEC Rule 10b-5 cause of action and a pleading requirement of the Federal Rules." *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 280-81 (7th Cir. 1996); see also Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In addition, the complaint must comply with the pleading requirements of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b), which requires the complaint to specify each allegedly misleading statement and the reasons why it is misleading, and to "state with particularity the facts giving rise to a strong inference that the defendant acted with" scienter.

A.

The defendants argue that the statements are pleaded with insufficient particularity. Their first objection is to the "who"

6

allegations. The oral statements are properly attributed to Scott and Alan Anixter, and the defendants do not challenge the sufficiency of these allegations. The complaint defines Alan and Scott Anixter, Putnam and Welchko as the "principal individual defendants," and many of the allegations attribute actions to the "principal individual defendants" *see, e.g.*, Compl. ¶¶ 28, 31, while others name the defendants specifically, *see, e.g.*, Compl. ¶ 32, and still others refer only to Anicom or the "defendants" generally. For example, the press releases on April 29 and July 30, 1998, are attributed only to "Anicom," not to any particular defendant named in this action.

Tricontinental argues that the "group pleading" doctrine "allows plaintiffs to rely on the presumption that certain statements of a company, such as financial reports, prospectuses, registration statements, and press releases, are the collective work of those high-level individuals with direct involvement in the everyday business of the company." *Sutton v. Bernard*, No. 00 C 6676, 2001 WL 897593, at *5 n.5 (N.D. Ill. Aug. 9, 2001) (Grady, J.). Several district courts have recognized the existence of this doctrine, *see Danis v. USN Communications, Inc.*, 73 F. Supp. 2d 923, 939 n.9 (N.D. Ill. 1999) (Conlon, J.); *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 987 (E.D. Mo. 1999); *In re Digi Int'l, Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1101 (D. Minn.

7

1998), although "[t]he Seventh Circuit has not ruled on the applicability of the group pleading doctrine following the enactment of the PSLRA." *Sutton*, 2001 WL 897593, at *5. Here the complaint defines Alan and Scott Anixter, Putnam and Welchko as the "principal individual defendants," Compl. ¶ 1, so where it attributes actions to them it may be understood as alleging that each of the four principal individual defendants actually committed or authorized the alleged acts or representations, including the misleading representations and omissions in the Form 10-Q reports, which were signed by Welchko. This is sufficient under the group pleading doctrine of the PSLRA.

Nonetheless, some allegations are attributable to merely to "Anicom" (which is not even sued here) or "defendants" generally, and these are insufficient to satisfy the heightened pleading requirements of Rule 9(b). *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient."); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *see also Geinko v. Padda*, No. 00 C 5070, 2001 WL 1163728, at *4 n.3 (N.D. Ill. Sept. 28, 2001) (Coar, J.) (rejecting allegations against "defendants" generally).

Tricontinental has sufficiently pleaded "where" or "when" the

8

fraud occurred with one exception: Scott Anixter's alleged representation that the stock involved in the transaction was worth $40 million, Compl. ¶ 32, is not identified by date or location, so it fails to comply with Rule 9(b).

Generally speaking, the "what" of this fraud claim is made up of oral statements by the Anixters and the two 1998 Form 10-Q reports. Tricontinental alleges that these statements were misleading because they did not disclose the alleged scheme of false billing. The defendants object that Tricontinental only provides details for the J.W. Few transaction, which represented only $2.1 million in false billings, and that the "conclusory allegations" of a billing scheme are insufficient to satisfy the PSLRA and Rule 9(b). The basis of this fraud action is the non-disclosure of the scheme of fictitious billing, and liability under Rule 10b-5 attaches to *statements or omissions* relating to the billing scheme, not to the billing scheme itself. Even under the PSLRA, "a complaint need not describe each single specific transaction in detail nor allege the precise amount of overstatement on a period by period basis," especially where most of the evidence necessary to prove these allegations is in the hands of the defendants. *In re First Merchants Acceptance Corp. Secs. Litig.*, No. 97 C 2715, 1998 WL 781118, at *8-9 (N.D. Ill. Nov. 4, 1998) (Coar, J.) (holding that complaint sufficiently alleged that financial statements materially misstated earnings and

9

net worth although it did not describe specific transactions). Even if the plaintiffs can only allege one incident of fictitious billing, if that one incident was enough to make their statements false, the description of the fraud satisfies both Rule 9(b) and the PSLRA, 15 U.S.C. § 78u-4(b)(1).

B.

On April 29, 1998, Anicom issued a press release reporting first quarter earnings, and Tricontinental alleges that Scott Anixter said that Anicom's "current financial strength will allow us to continue growing aggressively." Alan Anixter is alleged to have said that Anicom would "continue to maximize operating leverage from our acquisitions." Compl. ¶ 25. On July 30, 1998, Alan Anixter allegedly reported Anicom's "current financial strength." Compl. ¶ 26. Prior to the closing, Alan and Scott Anixter represented that "Anicom had a great future and that the upward earnings trend reflected in Anicom's reported earnings would continue." Compl. ¶ 32. "[P]redictions and forecasts which are not of the type subject to objective verification are rarely actionable under § 10(b) and Rule 10b-5." *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995). Tricontinental argues that these statements were statements of current financial condition because "continue" necessarily refers to a present condition, but "indefinite predictions of 'growth' are better described as puffery rather than as material statements of fact." *Id.* No reasonable investor would

rely on such vague and indefinite statements. *See Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1332 (7th Cir. 1995). The oral statements by Alan and Scott Anixter are not actionable.

C.

Both of the 1998 Form 10-Q reports contained the following statement:

> the significant increase [in net sales form the prior year-quarter] is attributable to new customers, new products, expanded market penetration and increased volume with existing customers, all of which have resulted from [Anicom]'s acquisitions and internal growth.

Compl. ¶ 27; Def. Ex. F, G. The defendants argue that Tricontinental has failed to plead even minimally that this statement was false, but Rule 10b-5 prohibits more than statements that are facially false; it prohibits the "omission of a material fact that would render [otherwise truthful] statements made misleading." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996). Tricontinental argues that this statement was misleading because Anicom relied on fictitious revenues and that they failed to disclose that the "significant increase" was due, at least in part, to the improper recognition scheme in place during those quarters. It also alleges that the financial statements in the 10-Q reports were false because of the billing scheme. Tricontinental describes the fictitious scheme and alleges that the principal individual defendants directed Anicom employees to generate the fraudulent orders, Compl. ¶ 26, and that "[e]ach of

11

the Principal Individual Defendants participated in drafting or reviewing and approving the issuance of the false and misleading financial reports and SEC filings," Compl. ¶ 51.

However, even though the financial statements are sufficiently alleged to be false, Tricontinental must also allege "with particularity facts giving rise to a strong inference" that the defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2). The Seventh Circuit has not addressed what is necessary to raise a "strong inference" of scienter, but courts in this district have applied the Second Circuit test, which allows the plaintiff to demonstrate scienter "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1253 (N.D. Ill. 1997) (Moran, J.) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Tricontinental alleges that the defendants had the opportunity because they had real-time access to current sales and revenue data and were in control of Anicom. Compl. ¶ 57. In "order to demonstrate motive, a plaintiff must show 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.' Merely alleging facts that lead to a 'strained and tenuous inference' of motive is insufficient to satisfy the pleading requirement." *Phillips v. LCI Int'l, Inc.*, 190

F.3d 609, 621 (4th Cir. 1999) (citations omitted). There are no allegations of insider trading here, but Tricontinental argues that, as officers and directors of Anicom, the defendants had a personal stake in the success of the company, and that Anicom's acquisition strategy depended on keeping its stock price high. "The simple fact of a defendant's status as an officer or director of a company, without more, does not give rise to a strong inference" of scienter. *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000) (Castillo, J.). If that were enough, "virtually any corporate executive would have the requisite intent to defraud, since most salaries and benefit packages have some incentive-based dimension." *See In re Allscripts, Inc. Secs. Litig.*, No. 00 C 6796, 2001 WL 743411, at *11 (N.D. Ill. June 29, 2001) (Kocoras, J.). And a desire to further the corporate acquisition strategy is too general to demonstrate a motive to defraud. *See id.* (holding that motive to inflate stock prices for acquisition was "too vague"; citing cases).

However, Tricontinental also alleges circumstantial evidence of conscious misbehavior or recklessness. It points to the proposed restatement of earnings, the alleged false billing scheme, and the defendants' access to and control over Anicom's financial information. Financial restatements, standing alone, are insufficient to give rise to an inference of fraud because "only a fraction of financial deteriorations reflects fraud." *DiLeo*, 901

F.2d at 627. Likewise, allegations that a defendant had "access" to information and "paid close attention to sales trends," by themsleves, "paint with too broad a brush and cannot satisfy the PSLRA's pleading standards," *Allscripts*, 2001 WL 743411, at *11, which require particularity.

But Tricontinental also alleges that the principal individual defendants directed the fraudulent billing scheme, Compl. ¶ 28, that Putnam "personally directed branch offices and Anicom's 'Drop Ship' department to engage in fictitious billing," Compl. ¶ 62, and that Welchko "personally orchestrated the entry of at least nine fictitious invoices into the accounting system to offset credits that were due customers, and he was repeatedly informed by regional credit managers of fraudulent prebilling" Compl. ¶ 63. Judge Darrah held that similar allegations of scienter were sufficient, although in that case the class action plaintiffs identified fourteen separate transactions that may have been the result of billing fraud and here Trincontinental alleges only one--the J.W. Few invoice dated March 31, 1998. Compl. ¶ 29. Considering the allegations in their totality, the single specific example of fraudulent billing, together with the allegations that the principal individual defendants personally directed and oversaw the scheme of fraudulent billing, had access to up-to-the-minute financial and transactional information, and announced substantial restatements that coincide with the duration of the alleged billing

scheme, is sufficient to give rise to a strong inference of scienter.

### III.

With regard to Tricontinental's Illinois common law fraud claim, under Rule 9(b), states of mind, such as knowledge and intent to defraud, can be pleaded generally, and I have already held that Tricontinental otherwise satisfied the pleading requirements of Rule 9(b) except as to allegations against "Anicom" and the "defendants" generally, and as to one statement by Scott Anixter. Because the pleading requirements are satisfied, I reach the merits of the state law claim.[3] "The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1997).

A plaintiff's reliance on a false statement or omission must be reasonable, and "[t]he right to rely depends on consideration of all the surrounding circumstances." *Miller v. William Chevrolet/ Geo, Inc.*, 762 N.E.2d 1, 9 (Ill. App. Ct. 2001). The Agreement here contained a merger clause which stated that it "supersede[s] all

---

[3] I have jurisdiction over the state law claim under 28 U.S.C. § 1332.

15

prior agreements between the parties" and "shall not be modified or affected by an offer, proposal, statement or representation, oral or written, made by for any party in connection with the negotiation of the terms hereof." Def. Ex. A at 55, ¶ 12.9. The defendants argue that this bars reasonable reliance on any financial statements other than the audited 1997 10-K report. One Illinois court has held that "the element of justifiable reliance is absent . . . [where] a written agreement which is complete on its face supersedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term or agreement on that subject matter." *Barille v. Sears Roebuck and Co.*, 682 N.E.2d 118, 123 (Ill. App. Ct. 1997). But that court applied contract principles of merger and the parol evidence rule, which govern the legal interpretation of a contract, to the fact-intensive inquiry of reasonable reliance on a fraudulent statement. Illinois law is clear that "[f]raud, even in the inducement, may justify consideration of prior understandings which would be otherwise excluded under the parol evidence rule." *Carlile v. Snap-on Tools*, 648 N.E.2d 317, 323 (Ill. App. Ct. 1995). Tricontinental alleges that it was induced to enter the contract by fraud, so *Barille* does not apply to the facts here. *See Arlington Fin. Corp. v. Ben Franklin Bank of Ill.*, No. 98 C 7068, 1999 WL 286080, *5 (N.D. Ill. Apr. 29, 1999) (Conlon, J.).

Nonetheless, the oral statements by Alan and Scott Anixter are

16

not actionable under Illinois law because they are vague statements about future performance, and "[s]tatements regarding future events or circumstances are not a basis for fraud." *Barille*, 682 N.E.2d at 123. *See also Miller*, 762 N.E.2d at 7 (Puffing is not actionable fraud). However, the defendants state no other basis for dismissal under Illinois law, so Tricontinental states a claim for Illinois common law fraud based on the misleading 10-Q reports.

IV.

The defendants' motion to dismiss is GRANTED IN PART as to certain oral statements and press releases, but otherwise DENIED.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: July __, 2002